Michael J. Gulden (State Bar No. 243383)
GULDEN & ASSOCIATES, INC.
12100 Wilshire Boulevard, Suite 1225
Los Angeles, California 90025
Telephone: (310) 207-1120
Facsimile:  (888) 317-1917
MGulden@GuldenLaw.com

Attorneys for Plaintiff STEPHEN HANKS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

**CV12-05134 MMM(SSx)**

| | |
|---|---|
| STEPHEN HANKS, an individual, | Case No. |
| Plaintiff, | Assigned to the Hon. |
| vs. | **COMPLAINT FOR:** |
| BRISTOL PALIN, an individual; A&E TELEVISION NETWORKS, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive, | 1) **DEFAMATION;** |
| | 2) **INVASION OF RIGHT TO PRIVACY (Against Bristol Palin);** |
| Defendants. | 3) **INVASION OF RIGHT TO PRIVACY (Against A&E);** |
| | 4) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** |
| | 5) **MISAPPROPRIATION OF RIGHT OF PUBLICITY IN VIOLATION OF CIVIL CODE § 3344; and** |
| | 6) **COMMON LAW MISAPPROPRIATION OF RIGHT OF PUBLICITY** |
| | **[JURY TRIAL DEMANDED]** |

///
///
///
///

COMPLAINT

For his Complaint herein, Plaintiff Stephen Hanks ("Plaintiff") alleges as follows:

## THE PARTIES

1. Plaintiff is an individual who resides and is domiciled in the State of California, County of Los Angeles.

2. Defendant Bristol Palin is an individual who resides and is domiciled in the State of Alaska.

3. Defendant A&E Television Networks, LLC ("A&E") is a Delaware limited liability company, with its headquarters located in New York, New York. (Palin and A&E are collectively referred to herein as "Defendants.")

4. Plaintiff does not know the true names and capacities of DOES 1 through 10, inclusive, and Plaintiff therefore sues said Defendants by such fictitious names pursuant to Section 474 of the California Code of Civil Procedure. Plaintiff will seek leave of Court to amend this Complaint when said true names and capacities have been ascertained. Plaintiff alleges, on information and belief, that each of the Defendants designated as a Doe herein was the agent and/or alter ego of each of the remaining Defendants, or is in some manner responsible for the events and occurrences herein described, and legally and proximately caused injury and damages to Plaintiff as alleged herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this lawsuit because the amount in controversy exceeds this Court's jurisdictional amount, and complete diversity of citizenship exists. 28 U.S.C. § 1332.

6. Venue is proper in this Court because the transactions at issue and certain actionable events described below occurred, or were to be performed, in the County of Los Angeles, California. 28 U.S.C. § 1391.

/ / /

/ / /

### FACTS COMMON TO ALL CAUSES OF ACTION

*Bristol Palin Approached Plaintiff at a Bar and*

*Recorded an Exchange With Plaintiff Without his Knowledge or Consent*

7. On September 22, 2011, Plaintiff was having drinks with friends at "Saddle Ranch Chop House" ("Saddle Ranch"), a western-themed bar located in West Hollywood, California. Prior to that date, Mr. Hanks had frequented Saddle Ranch regularly.

8. While at the bar, Plaintiff overheard nearby patrons discussing the fact that Bristol Palin was inside the bar, riding the mechanical bull. The patrons were discussing their general disagreement with the politics of Bristol Palin's mother, Sarah Palin. Then, one of the patrons at the bar yelled something out about Sarah Palin's political views. Soon thereafter, several other patrons, including Plaintiff, began to comment on Sarah Palin's political views.

9. Suddenly, Bristol Palin approached Plaintiff from behind as he was at the bar with his back to her. After confronting Plaintiff, Ms. Palin stated, in a condescending and demeaning tone, that she believed Plaintiff did not like her mother because "you are a homosexual." She further stated that she could "tell" that Plaintiff was "a homosexual" by the way he looked.

10. Bristol Palin then left the bar. As she was leaving, Plaintiff realized that Bristol Palin had someone filming their exchange, which he later learned would be used for a reality show on the "Bio" network. Bristol Palin had filmed the exchange with Plaintiff even though (i) no release was obtained from Plaintiff or anyone at Saddle Ranch, (ii) no signs were posted anywhere in Saddle Ranch informing patrons that they may be filmed, and (iii) Saddle Ranch had given Bristol Palin permission to film *only* herself and the friends she had brought with her -- not patrons.

### *Bristol Palin Defamed Plaintiff*

11. Thereafter, Plaintiff learned that Bristol Palin's planned reality show on the "Bio" network had been cancelled and would never air. In January 2012, Bristol

1  Palin gave an interview to "In Touch" magazine, in which she blamed Plaintiff for
2  causing her to leave Los Angeles and move back to Alaska, stating: "I wasn't really into
3  the Hollywood thing. After [the encounter with Plaintiff at Saddle Ranch], I realized
4  that I was over it. I was ready to come home."

5  12.  Bristol Palin blamed Plaintiff for her decision to leave Los Angeles for
6  Alaska even though she had purchased her new home in Alaska on July 29,
7  2011 -- ***more than two months before the encounter with Plaintiff***. Accordingly,
8  Bristol Palin had in reality planned to move back to Alaska at least as of July 2011.
9  Plaintiff was not the cause of Bristol Palin fleeing Los Angeles for Alaska, contrary to
10 what she stated to In Touch magazine.

11                    ***Defendants have Repeatedly Unlawfully Used***
12              ***Plaintiff's Image for Profit in Promotional Advertising***

13 13.  A few months later, leading up to the filing of this Complaint, Plaintiff
14 began to receive numerous telephone calls from friends and family informing him that
15 they had seen the footage of Bristol Palin approaching Plaintiff at Saddle Ranch
16 repeatedly used in promotional advertisements for a reality show set to premier on
17 Lifetime Television (owned by A&E) entitled "Bristol Palin: Life's a Tripp."

18 14.  Plaintiff has since demanded that Defendants cease using his image for
19 profit given he was unaware he was being filmed at Saddle Ranch, and that Defendants
20 did not obtain Plaintiff's permission to use his image for their profit. Defendants have
21 refused to do so.

22                           **FIRST CAUSE OF ACTION**
23                         **(For Defamation Against Bristol Palin)**

24 15.  Plaintiff repeats and re-alleges each and every allegation contained in the
25 preceding paragraphs of this Complaint, as fully set forth herein.

26 16.  As detailed herein, In January 2012, Bristol Palin gave an interview to
27 "In Touch" magazine, in which she falsely blamed Plaintiff for causing her to leave Los
28 Angeles and move back to Alaska, stating: "I wasn't really into the Hollywood thing.

1  After [the encounter with Plaintiff at Saddle Ranch], I realized that I was over it. I was
2  ready to come home."

3      17.    Bristol Palin blamed Plaintiff for her decision to leave Los Angeles for
4  Alaska even though she had purchased her home in Alaska on July 29, 2011 -- more
5  than two months before the encounter with Plaintiff. Accordingly, Bristol Palin had in
6  reality planned to move back to Alaska at least as of July 2011. Plaintiff was not the
7  cause of Bristol Palin fleeing Los Angeles for Alaska, contrary to what she stated to In
8  Touch magazine.

9      18.    Because of the facts and circumstances known to the readers of the
10  statement, the statement tended to injure Plaintiff in his occupation, and/or to expose
11  him to hatred, contempt, ridicule and/or shame, and/or to discourage others from
12  associating or dealing with Plaintiff.

13      19.    As a result of Bristol Palin's defamatory statements, Plaintiff suffered
14  harm to his profession and occupation, and expended money as a result of the
15  statements. The statements of Bristol Palin were a substantial factor in causing
16  Plaintiff's harm.

17      20.    The conduct of Bristol Palin, as alleged herein, was deliberate, malicious
18  and despicable and reflects a conscious and/or reckless disregard of the rights and
19  interest of Plaintiff, thereby entitling Plaintiff to exemplary and punitive damages.

20                        **SECOND CAUSE OF ACTION**
21                **(For Invasion of Right to Privacy Against Bristol Palin)**

22      21.    Plaintiff repeats and re-alleges each and every allegation contained in the
23  preceding paragraphs of this Complaint, as fully set forth herein.

24      22.    As set forth herein, Bristol Palin gave an interview to "In Touch"
25  magazine, in which she falsely blamed Plaintiff for causing her to leave Los Angeles
26  and move back to Alaska, stating: "I wasn't really into the Hollywood thing. After [the
27  encounter with Plaintiff at Saddle Ranch], I realized that I was over it. I was ready to
28  come home."

Case 2:12-cv-05134-MMM-SS   Document 1   Filed 06/13/12   Page 6 of 10   Page ID #:8

23. Bristol Palin blamed Plaintiff for her decision to leave Los Angeles for Alaska even though she had purchased her home in Alaska on July 29, 2011 -- more than two months before the encounter with Plaintiff. Accordingly, Bristol Palin had in reality planned to move back to Alaska at least as of July 2011. Plaintiff was not the cause of Bristol Palin fleeing Los Angeles for Alaska, contrary to what she stated to In Touch magazine.

24. Bristol Palin knew her statements were false at the time she made them. By her statements, Bristol Palin placed Plaintiff in a false light, constituting an invasion of Plaintiff's right to privacy, which was caused by the conduct of Bristol Palin.

25. In addition, by degradingly accusing Plaintiff of being "a homosexual" in front of others, Bristol Palin publicly disclosed private facts about Plaintiff, constituting a separate invasion of Plaintiff's right to privacy.

26. As a result of Bristol Palin's conduct, Plaintiff suffered harm to his profession and occupation, and expended money as a result of the statements. The statements of Bristol Palin were a substantial factor in causing Plaintiff's harm.

27. The conduct of Bristol Palin, as alleged herein, was deliberate, malicious and despicable and reflects a conscious and/or reckless disregard of the rights and interest of Plaintiff, thereby entitling Plaintiff to exemplary and punitive damages.

### THIRD CAUSE OF ACTION

### (For Invasion of Right to Privacy Against A&E)

28. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as fully set forth herein.

29. As described herein, A&E has repeatedly used Plaintiff's image for commercial advantage without authorization, constituting an invasion of Plaintiff's right to privacy.

30. Moreover, by using footage of Bristol Palin degradingly accusing Plaintiff of being "a homosexual," A&E has publicly disclosed private facts about Plaintiff, constituting a separate invasion of Plaintiff's right to privacy.

5
COMPLAINT

31. As a result of A&E's conduct, Plaintiff suffered harm to his profession and occupation, and expended money as a result of the statements. The conduct of A&E was a substantial factor in causing Plaintiff's harm.

32. The conduct of A&E, as alleged herein, was deliberate, malicious and despicable and reflects a conscious and/or reckless disregard of the rights and interest of Plaintiff, thereby entitling Plaintiff to exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

**(For Intentional Infliction of Emotional Distress Against Bristol Palin)**

33. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as fully set forth herein.

34. As detailed herein, Bristol Palin first accused Plaintiff of being "a homosexual" in a degrading manner in front of others at Saddle Ranch. She then in a magazine article blamed Plaintiff for her decision to leave Los Angeles for Alaska even though she had purchased her home in Alaska on July 29, 2011 -- more than two months before the encounter with Plaintiff. Accordingly, Bristol Palin had in reality planned to move back to Alaska at least as of July 2011. Plaintiff was not the cause of Bristol Palin fleeing Los Angeles for Alaska, contrary to what she stated to In Touch magazine.

35. Bristol Palin's conduct was outrageous. By her conduct, Bristol Palin intended to cause Plaintiff emotional distress. Bristol Palin acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred, or would later read her statements in In Touch magazine.

36. As a result of the conduct of Bristol Palin, Defendant suffered severe emotional distress. Bristol Palin's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

37. The conduct of Bristol Palin, as alleged herein, was deliberate, malicious and despicable and reflects a conscious and/or reckless disregard of the rights and interest of Plaintiff, thereby entitling Plaintiff to exemplary and punitive damages.

## FIFTH CAUSE OF ACTION

### (For Misappropriation of Right of Publicity in

### Violation of Civil Code Section 3344 Against A&E)

38. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as fully set forth herein.

39. A&E has violated Plaintiff's exclusive rights by knowingly and intentionally using Plaintiff's image, without his prior consent, for commercial gain and profit in connection with the advertising, marketing and distributing of "Bristol Palin: Life's a Tripp."

40. The unauthorized use of Plaintiff's image, without his prior consent, for commercial gain and profit in connection with the advertising, marketing and distributing of "Bristol Palin: Life's a Tripp," has directly resulted in substantial and ongoing harm and injury to Plaintiff.

41. The conduct of A&E, as alleged herein, was deliberate, malicious and despicable and reflects a conscious and/or reckless disregard of the rights and interest of Plaintiff, thereby entitling Plaintiff to exemplary and punitive damages.

## SIXTH CAUSE OF ACTION

### (For Common Law

### Misappropriation of Right of Publicity Against A&E)

42. Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as fully set forth herein.

43. A&E has violated Plaintiff's exclusive rights by knowingly and intentionally using Plaintiff's image, without his prior consent, for commercial gain and profit in connection with the advertising, marketing and distributing of "Bristol Palin: Life's a Tripp."

44. The unauthorized use of Plaintiff's image, without his prior consent, for commercial gain and profit in connection with the advertising, marketing and

///

7
COMPLAINT

distributing of "Bristol Palin: Life's a Tripp," has directly resulted in substantial and ongoing harm and injury to Plaintiff.

45. The conduct of A&E, as alleged herein, was deliberate, malicious and despicable and reflects a conscious and/or reckless disregard of the rights and interest of Plaintiff, thereby entitling Plaintiff to exemplary and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

### ON THE FIRST CAUSE OF ACTION

1. For compensatory damages, according to proof at trial;
2. For emotional distress damages, according to proof at trial;
3. For punitive damages, according to proof at trial;

### ON THE SECOND CAUSE OF ACTION

4. For compensatory damages, according to proof at trial;
5. For emotional distress damages, according to proof at trial;
6. For punitive damages, according to proof at trial;

### ON THE THIRD CAUSE OF ACTION

7. For compensatory damages, according to proof at trial;
8. For emotional distress damages, according to proof at trial;
9. For punitive damages, according to proof at trial;

### ON THE FOURTH CAUSE OF ACTION

10. For compensatory damages, according to proof at trial;
11. For emotional distress damages, according to proof at trial;
12. For punitive damages, according to proof at trial;

### ON THE FIFTH CAUSE OF ACTION

13. For compensatory damages, according to proof at trial;
14. For emotional distress damages, according to proof at trial;
15. For punitive damages, according to proof at trial;

## ON THE SIXTH CAUSE OF ACTION

16. For compensatory damages, according to proof at trial;

17. For emotional distress damages, according to proof at trial;

18. For punitive damages, according to proof at trial;

## ON ALL CAUSES OF ACTION

19. For pre-judgment interest, according to proof;

20. For costs of suit incurred herein, including attorneys' fees, under all applicable statutes and/or contracts; and

21. For such other relief as this Court may deem just and proper.

Dated: June 12, 2012                    GULDEN & ASSOCIATES, INC.


By: _____
Michael J. Gulden
Attorneys for Plaintiff STEPHEN HANKS